IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GREYSA M. AMEZAGA,

    Plaintiff,

    v.

JOHN E. POTTER,
POSTMASTER GENERAL,
UNITES STATES POSTAL SERVICE,

    Defendant.

CIVIL NO. 04-1944 (RLA)

**ORDER IN THE MATTER OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, JOHN E. POTTER, Postmaster General of the U.S. Postal Service has moved the court to enter summary judgment dismissing plaintiff's sex-based claims asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The court having reviewed the memoranda filed by the parties hereby rules as follows.

The complaint charges retaliation, hostile work environment based on same-sex harassment and constructive discharge. Plaintiff having failed to address defendant's arguments regarding the retaliation cause of action, the same is hereby **DISMISSED**.

Accordingly, we shall proceed to discuss only the viability of the remaining hostile environment and constructive discharge causes of action.

**THE FACTS**

The following facts appear undisputed based on the evidence submitted by the parties.

**CIVIL NO. 04-1944 (RLA)**                                                            **Page 2**

Plaintiff began to work for the U.S. Postal Service in February 1999 and was assigned to work at the Minillas Station in the fall of that year. In May 2001 plaintiff was temporarily assigned to the Loiza Street Station. After approximately six months plaintiff returned to work at the Minillas Station where she remained during her tenure with the Postal Service. Plaintiff was transferred back to the Minillas Station as a result of a union grievance.

Plaintiff worked a four-hour shift as a Part-Time Flexible Mail Processing Clerk.

IRMA CARRION worked as a window clerk at the Minillas Station during all times plaintiff performed duties at that station. MS. CARRION did not have any supervisory power as part of her work.

Plaintiff first met MS. CARRION in the fall of 1999 when she first started working at Minillas.

During the relevant period, no managerial or supervisory employees were stationed at the Minillas Station. Rather, the Manager of the Loiza Street Station was in charge of the operations at the Minillas Station as well as of other satellite post offices. Supervisors from the Loiza Street Station visited the satellite post offices, including the Minillas Station, to supervise their operations and then report back to the Manager of the Loiza Street Station.

Prior to her work at the Postal Service plaintiff had won several beauty pageants and done some modeling jobs. During her employment with the Postal Service, plaintiff continued to do

**CIVIL NO. 04-1944 (RLA)**                                                              **Page 3**

modeling work. She also provided modeling services to the Postal Service in one of its promotions and was selected by the Agency to give a lecture during Women's Week on how women could professionally succeed in life. MS. CARRION was aware of all the foregoing activities.

Plaintiff resigned from the Postal Service on November 5, 2003.

**SUMMARY JUDGMENT**

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law.

Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact,

only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, she must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Further, any testimony used in a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule 56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006); Carmona v.

**CIVIL NO. 04-1944 (RLA)**                                                              **Page 6**

Toledo, 215 F.3d 124, 131 (1st Cir. 2000). *See also*, Quiñones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). The affidavit must contain facts which are admissible in evidence. Lopez-Carrasquillo v. Rubianes, 230 F.3d at 414. "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

Lastly, motions for summary judgment must comport with the provisions of Local Rule 56(c) which, in pertinent part reads:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

This provision specifically requires that in its own statement of material facts respondent either admit, deny, or qualify each of movant's proffered uncontested facts and for each denied or qualified statement cite the specific part of the record which supports its denial or qualification. Respondent must prepare its separate statement much in the same manner as when answering a complaint.

**CIVIL NO. 04-1944 (RLA)**                                                                 **Page 7**

The purpose behind the local rule is to allow the court to examine each of the movant's proposed uncontested facts and ascertain whether or not there is adequate evidence to render it uncontested. *See*, Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001) (summary judgment should not "impose [upon the court] the daunting burden of seeking a needle in a haystack"); *see also*, Leon v. Sanchez-Bermudez, 332 F. Supp.2d 407, 415 (D.P.R. 2004).

Apart from the fact that Rule 56(e) itself provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted" in discussing Local Rule 311.12, its predecessor, the First Circuit Court of Appeals stressed the importance of compliance by stating that the parties who ignore its strictures run the risk of the court deeming the facts presented in the movant's statement of fact admitted. *See*, Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42 (1st Cir. 2004) ("uncontested" facts pleaded by movant deemed admitted due to respondent's failure to properly submit statement of contested facts). "[A]bsent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'" Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (citing Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir. 1983)).

**CIVIL NO. 04-1944 (RLA)** **Page 8**

### SEXUAL HARASSMENT

Sex discrimination also encompasses sexual harassment in the work setting. Depending on the circumstances, harassment may turn into a hostile work environment or a *quid pro quo* situation. "Sexual harassment, whether by means of a co-worker's demands for sexual favors as a '*quid pro quo*' or by the employer's creation or tolerance of a hostile and abusive work environment, constitutes discrimination prohibited by Title VII." Gorski v. New Hampshire Dep't of Corrections, 290 F.3d 466, 472 (1st Cir. 2002); O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

"By its nature, a hostile work environment often means that there are a series of events which mount over time to create such a poisonous atmosphere to violate the law." *Id*. at 727.

The protection against discrimination in employment based on sex provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) has been expanded to areas beyond strictly "economic" and "tangible discrimination" to situations where "sexual harassment is so severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment." Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662, 675 (1998) (citations, internal quotation marks and brackets omitted); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 302 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49, 60 (1986); Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83

(1st Cir. 2006); Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006); Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005).

Thus, even absent a tangible employment action, an employee may successfully assert a sex discrimination action under Title VII if the degree of the harassment is such that it is deemed to have altered the plaintiff's terms and conditions of employment. Fontanez-Nuñez v. Janssen Ortho LLC, 447 F.3d 50, 56 (1st Cir. 2006).

It is imperative to keep in mind that Title VII protects against discrimination "because of" sex. Therefore, the acts complained of must be motivated by plaintiff's sex. "What *is* essential is proof that the work environment was so hostile or abusive, because of conduct based on one of the prohibited factors identified in Title VII, that the terms or conditions of the plaintiff's employment were caused to be altered." Gorski, 290 F.3d at 472 (1st Cir. 2002) (italics in original).

Same-sex harassment is also covered by Title VII. Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of

**CIVIL NO. 04-1944 (RLA)**                                                                 **Page 10**

course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." Oncale, 523 U.S. at 80-81; Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258-59 (1st Cir. 1999); O'Rourke, 235 F.3d at 729.

"[S]ex-based harassment that is not overtly sexual is nonetheless actionable under Title VII". O'Rourke, 235 F.3d at 729. By the same token, the fact that "the words used have sexual content or connotations" does not automatically translate into sex discrimination. Oncale, 523 U.S. at 80. "The critical issue... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id*. (citation and internal quotation marks omitted).

Ascertaining which particular conduct falls within the "severe or pervasive" realm in order to trigger Title VII protection is no easy task. "'There is no mathematically precise test to determine whether a plaintiff presented sufficient evidence' that she was subjected to a severely or pervasively hostile work environment." Pomales, 447 F.3d at 83 (citing Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003)) (internal brackets omitted); Gorski, 290 F.3d at 472.

However, "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to

**CIVIL NO. 04-1944 (RLA)** **Page 11**

be so." Faragher, 524 U.S. at 787, 118 S.Ct. at 2283, 141 L.Ed.2d at 676; Oncale, 523 U.S. at 81; Pomales, 447 F.3d at 83; Noviello, 398 F.3d at 92.

"[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. In same-sex harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." Oncale, 523 U.S. at 81 (citation and internal quotation marks omitted).

The court will examine the totality of the circumstances to determine whether the degree of the hostile or abusive environment the employee is subjected to is intense enough to fit within Title VII protection. Faragher, 524 U.S. at 787, 118 S.Ct. at 2283, 141 L.Ed.2d at 676; Pomales, 447 F.3d at 83; Valentin-Almeyda, 447 F.3d at 94; Noviello, 398 F.3d at 92; Lee-Crespo v. Schering-Plough del Caribe, Inc., 354 F.3d 34, 46 (1st Cir. 2003); Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 40 (1st Cir. 2003).

> [W]hether the environment is objectively hostile or abusive must be answered by reference to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.

**CIVIL NO. 04-1944 (RLA)** **Page 12**

Marrero v. Goya de P.R., Inc., 304 F.3d 7, 18-19 (1st Cir. 2002) (citing Harris, 510 U.S. at 21, 114 S.Ct. at 370, 126 L.Ed.2d at (internal citations omitted); Valentin-Almeyda, 447 F.3d at 94; Fontanez-Nuñez, 445 F.3d at 56; Noviello, 398 F.3d at 92; Lee-Crespo, 354 F.3d at 46; Che, 342 F.3d at 40; Gorski, 290 F.3d at 472; Conto v. Concord Hosp., Inc., 265 F.3d 79, 82 (1st Cir. 2001); O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001).

"Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Oncale, 523 U.S. at 82.

The First Circuit Court of Appeals summarized the elements plaintiff must prove in order to succeed in her hostile work environment claim as set forth by the Supreme Court.  These are:

> (1) that she... is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Valentin-Almeyda, 447 F.3d at 94 (citing O'Rourke, 235 F.3d at 728).

"Although offhand remarks and isolated incidents are not enough, '[e]vidence of sexual remarks, innuendoes, ridicule and intimidation may be sufficient to support a jury verdict for hostile work environment.'" Valentin-Almeyda, 447 F.3d at 94 (citing O'Rourke, 235 F.3d at 729); Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S.Ct. 1508, 1510, 149 L.Ed.2d 509 (2001) (per curiam) (ordinarily isolated incidents will not be deemed to have altered terms and conditions of employment unless they are extremely serious).

Usually an isolated sexual advance *per se* does not translate into an abusive workplace environment. *See i.e.*, Pomales, 447 F.3d at 83 (comment and gesture by supervisor suggesting he wanted to have sexual relations with plaintiff, albeit crude not sufficient because it "comprised only a single incident." There was no evidence of the supervisor having either touched or physically threatened plaintiff) and also citing cases where the following not deemed sufficiently severe or pervasive under Title VII: five sexual advances by supervisor "highly doubtful"; "over a two-week period, a coworker stood behind the plaintiff to create physical contact, surreptitiously looked at the plaintiff's genitals in the restroom and engaged in unwanted touching; "single battery and two offensive remarks over six months."

A hostile work environment may result from "sexual remarks, innuendoes, ridicule and intimidation ... disgusting comments" Marrero v. Goya, 304 F.3d at 19 (citations and internal quotations

omitted) "unwelcome sexual advances or demands for sexual favors" Gorski, 290 F.3d at 472 (citations and internal quotations omitted) which are "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." O'Rourke, 235 F.3d at 728 (citations and quotation marks omitted). *See also*, Noviello, 398 F.3d at 84.

Courts must discern between "commonplace indignities typical of the workplace (such as tepid jokes, teasing, or aloofness... and severe or pervasive harassment... [and] [t]he thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Id* at 92. *See also*, Lee-Crespo, 354 F.3d at 37 (supervisor's conduct found "boorish and unprofessional" and plaintiff "subjected to incivility" "but... incidents... not severe or pervasive enough to alter the terms and conditions of [plaintiff's] employment").

In Fontanez-Nuñez, 447 F.3d at 57 the court found that a supervisor's "continued use of objectionable language and vulgar remarks" in plaintiff's presence which were often directed to employees in the area was not sufficiently severe or pervasive to be actionable. The court further explained that "[w]hile the vulgar language was inappropriate to the workplace and completely unprofessional, mere offensive utterances that did not unreasonably interfere with the employee's work performance do not amount to harassment that in essence altered the terms or conditions of [plaintiff's] employment." *See also*, Gorski, 290 F.3d at 469-70

("Sporadic use of abusive language does not create a hostile work environment because such conduct is not 'extreme' enough to alter the terms and conditions of employment.")

It is plaintiff's burden to establish the severity and pervasiveness of the harassment sufficient to alter the conditions of her employment. Conto, 265 F.3d at 82. In this particular case plaintiff must also present evidence that the harassment was based on plaintiff's gender. Lee-Crespo, 354 F.3d at 44 n.6.

Because this determination is "fact specific" Conto, 265 F.3d at 81, ordinarily "it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Marrero v. Goya, 304 F.3d at 19. *See also*, Che, 342 F.3d at 40 ("[a]s a general matter, these are questions best left for the jury.") but "summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." Pomales, 447 F.3d at 83 (citation and internal quotation marks and brackets omitted).

Additionally, plaintiff must present evidence that the harassment altered the terms of her work. *See*, *id*. at 84 (nor did plaintiff "present[]... proof that [her supervisor's] conduct negatively affected her ability to work"); Lee-Crespo, 354 F.3d at 46 (plaintiff failed to introduce evidence that the acts complained of constituted "an impediment to [plaintiff's] work performance.")

**CIVIL NO. 04-1944 (RLA)** **Page 16**

Plaintiff alleges that beginning in 1999, and during the three years she worked at the Minillas Station she was subjected to continuous same-sex harassment by MS. CARRION which conduct was "motivated by general hostility to the presence of women in the workplace and by jealousy of her female physique attributes."[1]

Specifically, plaintiff claims that MS. CARRION would make comments about her body and physique, such as "you are the ugliest woman I ever met"[2] as well address her using foul language; use vulgar and physical gestures towards her and to women in general both within and outside the Postal Service station.[3]

Additionally, plaintiff contends that MS. CARRION frequently denigrated her intellectual capacity and professional qualifications and would also try to get plaintiff into trouble with her supervisors for baseless reasons. Plaintiff further states that MS. CARRION displayed hostile behavior towards other female employees at the station.

JOSE HERNANDEZ, plaintiff's co-worker at Minillas Station, as well as SANTA MELENDEZ, the cleaning lady at the Minillas facilities, corroborated plaintiff's version of the treatment plaintiff and other women were subjected to by MS. CARRION. We find that the events as described by plaintiff and both these witnesses are sufficient to

---

[1] Complaint ¶ 17.

[2] *Id.*

[3] Plaintiff conceded that MS. CARRION never expressed any sexual desire towards her.

meet the pervasiveness and severity requirements for an actionable sexual harassment claim.

Defendant contends that the conflict between plaintiff and MS. CARRION was based on personal animosity and not sex. However, there is ample evidence on record sufficient for a jury to find that the harassment plaintiff was subjected to was motivated by the presence of women in the workplace and not necessarily due to a personality clash. The hostile behavior was directed only at the women not at the men. Plaintiff was targeted because she was a woman. Males and females were treated differently by MS. CARRION. In addition to plaintiff, MS. CARRION harassed another postal employee, ROSA SANTIAGO, to the point where she suffered a nervous breakdown and had to be transferred to another location. A temporary female postal employee was also mocked and harassed by MS. CARRION. The cleaning lady was also constantly harassed by MS. CARRION to the point where they almost engaged in a physical confrontation.

Based on the foregoing, we conclude that there is sufficient evidence for a trier of fact to conclude that plaintiff was subjected to same-sex sexual harassment by her co-worker actionable under Title VII.

**CONSTRUCTIVE DISCHARGE**

As the term unequivocally connotes, the *sine qua non* requirement for a constructive discharge claim is that a plaintiff is compelled to leave his or her employment.

**CIVIL NO. 04-1944 (RLA)**                                                                 **Page 18**

> [T]he purpose of the constructive discharge doctrine [is] to protect employees from conditions so unreasonably harsh that a reasonable person would feel compelled to leave the job. The doctrine reflects the sensible judgment that employers charged with employment discrimination ought to be accountable for creating working conditions that are so intolerable to a reasonable employee as to compel that person to resign.

Ramos v. Davis & Geck, Inc., 167 F.3d 727, 732 (1st Cir. 1999). *See also*, Feliciano-Hill v. Principi, 439 F.3d 18, 27 (1st Cir. 2006); Vieques Air Link, Inc. v. U.S. Dep't of Labor, 437 F.3d 102, 108 (1st Cir. 2006).

In order to establish a claim based on constructive discharge "plaintiff must prove that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 613 (1st Cir. 2000) (citations and internal quotations omitted); Jorge v. Rumsfeld, 404 F.3d 556, 562 (1st Cir. 2005); Simas v. First Citizen's Fed. Credit Union, 170 F.3d 37, 46 (1st Cir. 1999); Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir. 1997). *See also*, Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 36 (1st Cir. 2001) ("treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position").

**CIVIL NO. 04-1944 (RLA)**                                                                 **Page 19**

The "subjective perceptions" of the employee are insufficient. The reasonableness of plaintiff's decision to leave his employment is an objective one and will be examined based on the ability to "present sufficient evidence to allow the jury to credit his claim that a reasonable employee would have felt compelled to resign under the circumstances," Ramos v. Davis & Geck, Inc., 167 F.3d at 731 and "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir.2002). *See also*, Feliciano-Hill, 439 F.3d at 27 and Serrano-Cruz, 109 F.3d at 26 (applying "objective standard" in examining employer's actions).

Likewise, discriminatory intent is not part of the probative calculus for this particular type of claim. Thus, plaintiff is not required to present "proof that the employer created the intolerable work conditions with the specific intent of forcing the employee to resign." Ramos v. Davis & Geck, Inc., 167 F.3d at 732.

Defendant argues that the alleged hostile environment was not sufficiently severe so as to compel a reasonable person to resign. However, according to the evidence, the prevailing atmosphere generated by MS. CARRION at the work setting by her constant harassment, outbursts and violent nature not only affected plaintiff's emotional well-being but also made her fear for her safety to the point where she developed a major depression which required that she seek psychiatric treatment. Plaintiff eventually resigned upon medical advise due to the intolerable working

conditions at the Minillas Station generated by MS. CARRION's general attitude towards women.

Further, there is no indication that the intolerable situation at work would change. Plaintiff had complained to no avail. Faced with this scenario a reasonable person in plaintiff's position would have also felt compelled to resign.

### CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (docket No. **22**)[4] is disposed of as follows:

- The claim for retaliation is **DISMISSED.**

    Judgment shall be entered accordingly.

- The request to dismiss the claims for sexual harassment and constructive dismissal is **DENIED.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of May, 2007.

S/Raymond L. Acosta
RAYMOND L. ACOSTA
United States District Judge

---

[4] *See also*, Plaintiff's Opposition (docket No. **29**) and Reply (docket No. **36**).